## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Poulos, Inc., an Illinois corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  **FILED: JUNE 12, 2008** |
| v. | ) | **08CV3396** |
| | ) | **JUDGE SHADUR** |
| Hartford Fire Insurance Company, a | ) | Hon.  **MAGISTRATE JUDGE COX** |
| Connecticut corporation, | ) | **AEE** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Poulos, Inc. ("Poulos"), by its undersigned attorneys, for its Complaint against Defendant, Hartford Fire Insurance Company ("Hartford" or "Surety"), alleges as follows:

### PARTIES

1.     Poulos is a corporation organized under the laws and authority of the State of Illinois with a principal place of business located in Chicago, Illinois.  Poulos is in the business of providing general contracting and construction services.

2.     Hartford is a corporation organized under the laws and authority of the State of Connecticut with a principal place of business located in Hartford, Connecticut. Hartford is in the business, among other things, of selling and issuing performance bonds to general contractors for construction projects.

### JURISDICTION AND VENUE

1

3.      This matter arises out of three (3) performance bonds issued by Hartford to Grace Electrical Construction Corporation ("Grace"), a subcontractor of Poulos, for the benefit of Poulos (collectively the "Performance Bonds"), related to construction contracts for improvements to the Bradford Anderson Oglesby Public Library ("Bradford Project"), Stickney Village Hall ("Stickney Project"), and the Sunny Hill Nursing Home of Will County ("Sunny Hill Project") (collectively the "Projects"). The Performance Bonds Hartford issued are all identical in form and substance. The Performance Bonds for the Bradford, Stickney and Sunny Hill projects are attached hereto as Exhibits A, B, and C, respectively.

4.      The Bradford Project and Stickney Projects are both located in Cook County, Illinois, and the Sunny Hill Project is located in Will County, Illinois.

5.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a), in that Plaintiff and Defendant are citizens of different states, and the matter in controversy exceeds $75,000, as is further explained below.

6.      Venue is proper in this Court pursuant to § 9 of the Performance Bonds, which provides that "Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located."

7.      Independently, venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to Poulos' request for relief occurred within the Northern District of Illinois and the properties which are the subject of the Performance Bonds are located in the Northern District of Illinois. Two important aspects of the dispute between the parties are the terms of the Performance Bonds and actions of

Hartford.  The Performance Bonds were negotiated and executed in the Northern District of Illinois, and the instructions and actions of Hartford, as they relate to the Performance Bonds and this dispute, occurred in the Northern District of Illinois.

## FACTUAL BACKGROUND

8.     In or about June 2006, Poulos entered into an agreement with the Will County Public Building Commission to provide general contracting and construction services for the Sunny Hill Project ("Sunny Hill Prime Contract").  In accordance with Article 5 of the Sunny Hill Prime Contract, Poulos executed a subcontract with Grace dated June 6, 2006, to perform all of the electrical work for the Sunny Hill Project ("Sunny Hill Subcontract").

9.     In or about October 2006, Poulos entered into an agreement with the City of Markham to provide general contracting and construction services for the Bradford Project ("Bradford Prime Contract").  In accordance with Article 5 of the Bradford Prime Contract, Poulos executed a subcontract with Grace dated October 20, 2006, to perform all of the electrical work for the Bradford Project ("Bradford Subcontract").

10.     In or about April 2007, Poulos entered into an agreement with the Village of Stickney to provide general contracting and construction services for the Stickney Project ("Stickney Prime Contract").  In accordance with Article 5 of the Stickney Prime Contract, Poulos executed a subcontract with Grace dated April 26, 2007, to perform all of the electrical work for the Stickney Project ("Stickney Subcontract").

11.     Pursuant to Article 9 of the Sunny Hill, Bradford and Stickney Subcontracts (collectively "the Subcontracts"), Grace furnished Poulos performance

bonds issued by Hartford and respectively identified as Performance Bond Number 83BCSEB7701, 83BCSEB7711 and 83BCSEJ1942 for the Projects.

The Hartford Performance Bonds

12.    Poulos is defined as the "Owner" and Grace is defined as the "Contractor" in the Performance Bonds. The Performance Bonds reference and incorporate the terms of the respective Subcontracts and define each Subcontract as "Construction Contract." The Performance Bonds state that the Surety binds itself to the Owner for the performance of the Construction Contract. *See* Performance Bonds Page 1 and Article 1.

13.    The Performance Bonds provide that the Surety's obligations under the Performance Bonds arise after (i) Poulos has notified Grace and the Surety it is considering declaring a Contractor Default and requests to arrange a conference with Grace and the Surety to be held no later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract; (ii) Poulos has declared a Contractor Default and formerly terminated Grace's right to complete the Construction Contract; and (iii) Poulos has agreed to pay the Balance of the Construction Contract to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner *Id.* Article 3.

14.    Hartford's obligations under the Performance Bonds include (i) arranging for Grace to complete the Construction Contract, if Poulos consents; or (ii) undertaking to perform and complete the Construction Contract itself; or (iii) obtaining bids from qualified contractors acceptable to Poulos for completion of the Construction Contract, arranging for a contract to be executed by Poulos and approved contractor, to be secured

4

with performance and payment bonds executed by a qualified surety, and paying to Poulos the amount of damages in excess of the Balance of the Contract Price incurred by Poulos resulting from Grace's default; or (iv) waiving its right to perform and complete, arrange for completion, or obtain a new contractor, and with reasonable promptness either determine the amount the Surety is liable to Poulos and tender payment thereof or deny liability in whole or in part and notify Poulos citing the reasons thereof. *Id.* Article 4.

15.    Article 5 of the Performance Bonds provides that the Surety shall be deemed in default of the Performance Bonds if it does not proceed with reasonable promptness as provided in Section 4 of the Performance Bonds. *Id.* Article 5.

16.    In addition to amounts that become due related to performance of the Subcontracts, Hartford agreed to be liable for costs to correct Grace's defective work, and additional legal, design professional and delay costs resulting from Grace's default and resulting from the actions or failure to act of Hartford under the Performance Bonds. *Id.* § 6.2.

<u>Poulos' Tender and Cooperation</u>

17.    On or about November 7, 2007, Grace advised Poulos that it would be unable to complete its performance of the Subcontracts. Grace subsequently sent three separate written notices to Hartford and Poulos advising the parties that it was unable to complete performance of the work under the Subcontracts, and requested that Hartford take such steps as it deems necessary to perform its obligations as Surety. Copies of the three notices sent by Grace are attached hereto as Exhibits D, E, and F, respectively.

18.    On or about November 8, 2007, Poulos sent three written notices advising Hartford that Poulos was considering, and saw no alternative to, declaring Grace in default of the Subcontracts and requesting to arrange a conference with Grace and Hartford to discuss methods of completing performance of the Subcontracts.  Copies of the three notices sent by Poulos are attached hereto as Exhibits G, H, and I, respectively.

19.  Hartford retained the services of Construction Consulting and Disbursement Services Inc. ("CCDS") to assist it review and process the Performance Bond claims.

20.    On or about December 4, 2007, representatives of Poulos, Hartford and CCDS met to discuss details of the three Projects and to determine how to complete performance of the Subcontracts ("December Meeting").    Poulos advised Hartford that it was concerned about the upcoming contract completion dates and requested instructions from Hartford as to how to proceed with the work of the Subcontracts. Poulos explained to Hartford and CCDS that Grace's default threatened Poulos' ability to timely complete the Projects.

21.    At the December Meeting, Poulos advised Hartford that it had a replacement contractor, AWA Construction Company ("AWA"), who would complete the work of the Subcontracts on a time and material basis.  Poulos provided Hartford with information about AWA and its billing rates.  Hartford agreed and approved of Poulos hiring AWA to complete the work of the Subcontracts on a time and material basis.  At the same meeting, Poulos advised Hartford that it expected the cost to complete the work of the Subcontracts to exceed the contract sum of the Subcontracts.  Poulos informed Hartford that it agreed to pay the balance of the Subcontracts in accordance with the terms of the Subcontracts and Performance Bonds.

22.    At the December Meeting, Poulos also advised Hartford and CCDS that under the Sunny Hill Prime Contract, the Owner had elected to have Poulos complete additional work for the project known as "Alternate #3." Poulos explained that it had a corresponding option under the Sunny Hill Subcontract to elect to have Grace complete the electrical work of Alternate #3, and had accordingly elected to exercise this option. Hartford agreed and approved of Poulos hiring AWA to complete the original scope of work under the Sunny Hill contract, but advised Poulos that Hartford would obtain bids for replacement contractors to complete the work of Alternate #3 of the Sunny Hill Subcontract.

23.    During the months of January and February of 2008, CCDS had its inspectors at the Bradford and Stickney Village Hall sites several times to observe the work of Poulos and AWA. At no time did CCDS provide any written or oral instructions to Poulos regarding any of the ongoing work. Nor did Hartford or CCDS ever provide any information to Poulos regarding the replacement contractors for Alternate #3 of the Sunny Hill Project.

24.    On March 17, 2008, Poulos sent Hartford written notice to (i) confirm that Hartford had instructed Poulos to have its replacement contractors complete the work of the Subcontracts so as not to jeopardize the Projects, (ii) demand that Hartford perform its obligations under the Performance Bonds, including payment of all amounts due under the respective Performance Bonds, and (iii) request that Hartford arrange for a meeting to discuss and resolve, inter alia, matters related to the Performance Bonds. A copy of the letter dated March 17, 2008 is attached hereto as Exhibit J.

25.    On April 2, 2008, representatives of Poulos, Hartford, CCDS, and Poulos' counsel met to discuss, inter alia, Hartford's prompt payment of all amounts due under the respective Performance Bonds and to confirm how Poulos should proceed to complete the work of Alternate #3 of the Sunny Hill Project ("April Meeting"). Poulos provided Hartford and CCDS with invoices from AWA for the Bradford and Stickney Projects that showed the contract sums for these two projects had thus far been exceeded in the amount $81,428 and $16,732, respectively.    Copies of the AWA invoices submitted to Hartford are attached hereto as Exhibits K and L, respectively.

26.    At the April Meeting, neither Hartford nor CCDS provided Poulos with any bids for replacement contractors to complete Alternate #3 of the Sunny Hill Project. Poulos reminded Hartford that pursuant to the Sunny Hill Prime Contract, Poulos needed to immediately commence work on Alternate #3 in order to be able to complete the project by the contract completion date. Poulos advised Hartford and CCDS that it had obtained bids from several replacement contractors for Alternate #3 to ascertain the additional cost to complete Alternate #3 and to have replacement contractors mobilized to commence the work in the event Hartford did not timely instruct Poulos to commence the work. Poulos explained that if Hartford did not promptly instruct Poulos as to how to proceed on Alternate #3, it would be forced to direct its replacement contractor to commence the work. Hartford advised Poulos that it would review the invoices, contract and bid documents provided by Poulos and promptly notify Poulos as to Hartford's liability under the Performance Bonds. The bids Poulos obtained from replacement contractors to complete the work of Alternate 3 exceed Grace's contract sum by approximately $400,000.

8

27.    Poulos has repeatedly contacted Hartford to follow up on the status of its Performance Bond claims, and in each instance, Hartford has represented that it "continues to investigate and process the claims." In letters to Hartford dated April 10, 2007 and April 30, 2007, Poulos again advised Hartford of the increasing costs it continues to incur due to Grace's default, and requested that Hartford perform its obligations as Surety under the Performance Bonds. The letters dated April 10, 2007 and April 30, 2007 are attached hereto as Exhibits M and N, respectively.

28.    Poulos has at all times cooperated with Hartford's requests for documents related to the Performance Bond claims.

29.    To date, Hartford has not performed its obligations as Surety under the Performance Bonds.

30.    Hartford has unreasonably delayed in performing its obligations under the Performance Bonds.

## COUNT I
## DECLARATORY RELIEF

31.    Poulos restates and realleges paragraphs 1 through 30 as though fully set forth herein.

32.    This Court is empowered by 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 to declare the rights and obligations of the parties.

33.    Pursuant to the respective Performance Bonds, Poulos is legally entitled to payment of all amounts it incurred in excess of the Subcontract contract sums related to Grace's default of the Subcontracts, including without limitation, correction of Grace's defective work and additional legal, design professional and delay costs resulting from Grace's default and the actions or failure to act of Hartford under the Performance Bond.

34.    Poulos performed all of its obligations under the Performance Bonds (except those that have been waived, released, or rendered impossible by the acts or omissions of Hartford) including, but not limited to, the following:

      a.    Poulos notified Hartford and Grace that it was considering declaring Grace in default under the Subcontracts and requested and attempted to arrange a conference with Grace and Hartford within fifteen days to discuss methods of performing the Subcontracts;

      b.    Grace declared itself in default under the Subcontracts by sending written notice of its inability to complete the Subcontracts, and Poulos terminated Grace's right to complete the Subcontracts; and

      c.    Poulos agreed to pay the balance of the Subcontract contract sum to Hartford in accordance with the terms of the Subcontracts or to a contractor selected to perform the Subcontracts in accordance with the terms of the Subcontracts and Performance Bonds.

35.    Hartford materially breached the Performance Bonds because it has failed or refused to perform any of its obligations specified in Article 4 of the Performance Bonds.

36.    Additionally, pursuant to Article 5 of the Performance Bonds, Hartford is in default of the Performance Bonds because it has failed to perform its obligations specified in Article 4 of the Performance Bonds despite receipt of additional written notices from Poulos demanding that Hartford perform its obligations under the Performance Bonds.

37.    Hartford's failure to timely perform its obligations as Surety has caused and continues to cause Poulos to incur damages, including without limitation, amounts incurred by Poulos to complete the work of the Subcontracts.

38.    An actual controversy exists between Poulos and Hartford concerning their respective rights and duties under the Performance Bonds with respect to Hartford's

obligation to pay Poulos the damages it incurred due to Grace's default of the Subcontracts. Poulos is informed and believes that Hartford contends it does not have a duty to pay Poulos the damages specified in the Performance Bonds.

39.    Poulos requests this Court to make and enter its binding judicial declarations in accordance with Poulos' contentions set forth above, and otherwise declare the rights and obligations of Poulos and Hartford under the Performance Bonds with respect to the duty of Hartford to pay Poulos the damages it has and will incur related to Grace's default under the Subcontracts, its attorney's fees, plus such other costs and expenses covered by the Performance Bonds. The requested declarations are both necessary and proper at this time under the circumstances in that the interests of judicial economy and substantial justice will be served thereby.

WHEREFORE, pursuant to 28 U.S.C. §§2201-02, Poulos prays that the Court:

a.    declare and adjudicate the rights and obligations of Poulos and Hartford with respect to the Payment Bonds;

b.    declare the damages (plus such other costs and expenses covered by the Performance Bonds) that Hartford is required to pay to Poulos;

c.    award Poulos its attorneys' fees and costs of suit incurred herein; and

d.    grant Poulos any other further relief as this Court deems just.

Dated:  June ___, 2008

**Poulos, Inc.**

By: _____
One of its attorneys

Robert J. Harris
Diana Zhitnitsky
Stein, Ray & Harris LLP
222 West Adams St.
Suite 1800
Chicago, IL 60606
(312) 641-3700

# EXHIBIT A

# ▦ AIA® Document A312™ – 1984

## *Performance Bond* – BOND# 83BCSEB7711

**CONTRACTOR** *(Name and Address):*

Grace Electrical
Construction Corporation
10350 Dearlove Rd., Unit C
Glenview, IL 60025

**OWNER** *(Name and Address):*

Poulos, Inc.
735 S. Laramie Ave.
Chicago, IL 60644

**SURETY** *(Name and Principal Place of Business):*

Hartford Fire Insurance Company
4245 Meridian Parkway
Aurora, IL 60504

**CONSTRUCTION CONTRACT**
Date: October 20, 2006
Amount: -Three Hundred Fifty Five Thousand Dollars & No/100-
($355,000.00)-
Description *(Name and Location):*
Bradford Anderson Oglesby Public Library
16640 S. Kedzie
Markham, IL 60426

**BOND**
Date *(Not earlier than Construction Contract Date):* October 26, 2006
Amount: -Three Hundred Fifty Five Thousand Dollars & No/100- ($355,000.00)-
Modifications to this Bond:   [ X ]   None   [ ]   See Last Page

| CONTRACTOR AS PRINCIPAL Grace Electrical Construction Corporation | SURETY Hartford Fire Insurance Company |
|---|---|
| Company:    (Corporate Seal) | Company:    *(Corporate Seal)* |
| Signature: | Signature: |
| Name and Title:  Scon Ja Chung  president | Name and Title:  William D. Miller, Attorney-in-fact |

*(Any additional signatures appear on the last page)*

**(FOR INFORMATION ONLY - Name, Address and Telephone)**

**AGENT'S OR BROKER:**

Kevin J. Scanlon, Columbian Agency
1005 West Laraway Road
New Lenox, IL 60451
815-485-4100

**OWNER'S REPRESENTATIVE**
*(Architect, Engineer or other party):*
Burnidge Cassion Associates, Inc.
(Architect)

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contract, Surety, Owner or other party shall be considered plural where applicable.

**EXHIBIT A**

AIA Document A312™ – 1984. Copyright © 1984 by The American Institute of Architects. All rights reserved. WARNING: This AIA™ Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA™ Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:58:49 on 10/26/2006 under Order No.1000243947_1 which expires on 6/23/2007, and is not for resale.
User Notes:                                                                 (1009359622)

1

§ 1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

§ 2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Section 3.1.

§ 3 If there is no Owner Default, the Surety's obligation under this Bond shall arise after:
§ 3.1 The Owner has notified the Contractor and the Surety at its address described in Section 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

§ 3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Section 3.1; and

§ 3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

§ 4 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:
§ 4.1 Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

§ 4.2 Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

§ 4.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

§ 4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:
    .1    After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or
    .2    Deny liability in whole or in part and notify the Owner citing reasons therefor.

§ 5 If the Surety does not proceed as provided in Section 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

§ 6 After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Section 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

AIA Document A312™ – 1984. Copyright © 1984 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:58:49 on 10/26/2006 under Order No.1000243947_1 which expires on 6/23/2007, and is not for resale.
User Notes:                                                                                                                                                  (1009359622)

2

§ 6.1 The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

§ 6.2 Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 4; and

§ 6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

§ 7 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

§ 8 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 9 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 10 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

§ 11 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted here from and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ 12 DEFINITIONS
§ 12.1 Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

§ 12.2 Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

§ 12.3 Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

§ 12.4 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

AIA Document A312™ – 1984. Copyright © 1984 by The American Institute of Architects. All rights reserved. WARNING: This AIA Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:58:49 on 10/26/2006 under Order No.1000243947_1 which expires on 6/23/2007, and is not for resale.
User Notes:                                                                                                    (1009359622)

3

§ 13 MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | *(Corporate Seal)* | Company: | *(Corporate Seal)* |
| | | | |
| Signature: | | Signature: | |
| Name and Title: | | Name and Title: | |
| Address: | | Address: | |

AIA Document A312™ – 1984. Copyright © 1984 by The American Institute of Architects. All rights reserved. WARNING: This AIA   Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA   Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:58:49 on 10/26/2006 under Order No.1000243947_1 which expires on 6/23/2007, and is not for resale.
User Notes:                                                                                                    (1009359622)

4

STATE OF ___Illinois_____ ss.:
COUNTY OF ___Will_____

On this ___26th___ day of ___October_____ ___2006___, before me
personally appeared _____William D. Miller_____, to me known, who,
being by me duly sworn, did depose and say:  that ___he___ reside(s) at _____
___New Lenox, Illinois_____; that ___he___ is/are the ___Attorney-in-fact___
of ___Hartford Fire Insurance Company_____, the corporation described
in and which executed the annexed instrument; that ___he___ know(s) the corporate seal of
said corporation; that the seal affixed to said instrument is such corporate seal; that it was
so affixed by order of the Board of Directors of said corporation; that ___he___ signed the
same name(s) thereto by like order; and that the liabilities of said corporation do not ex-
ceed its assets as ascertained in the manner provided by law.

"OFFICIAL SEAL"
MARCIA MAXWELL
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 03/29/2009

_Marcia Maxwell_
(Notary Public in and for the above County and State)

03/29/2009
My commission expires _____

surety
company
acknowledgment

BOND-3768-A

# POWER OF ATTORNEY

Direct Inquiries/Claims to:
THE HARTFORD
BOND, T-4
690 ASYLUM AVENUE
HARTFORD, CONNECTICUT 06115
call: 888-266-3488 or fax: 860-757-5835
Agency Code: 83-551421

KNOW ALL PERSONS BY THESE PRESENTS THAT:

| | |
|---|---|
| X | Hartford Fire Insurance Company, a corporation duly organized under the laws of the State of Connecticut |
| X | Hartford Casualty Insurance Company, a corporation duly organized under the laws of the State of Indiana |
| X | Hartford Accident and Indemnity Company, a corporation duly organized under the laws of the State of Connecticut |
| | Hartford Underwriters Insurance Company, a corporation duly organized under the laws of the State of Connecticut |
| | Twin City Fire Insurance Company, a corporation duly organized under the laws of the State of Indiana |
| X | Hartford Insurance Company of Illinois, a corporation duly organized under the laws of the State of Illinois |
| | Hartford Insurance Company of the Midwest, a corporation duly organized under the laws of the State of Indiana |
| | Hartford Insurance Company of the Southeast, a corporation duly organized under the laws of the State of Florida |

having their home office in Hartford, Connecticut, (hereinafter collectively referred to as the "Companies") do hereby make, constitute and appoint, *up to the amount of unlimited:*

Robert W. Kegley, Suellen Bottomley, Robert H. Walker, William D. Miller, R.L. McWethy, Kevin J. Scanlon
of
New Lenox, IL

their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety(ies) only as delineated above by ☒, and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof, on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

In Witness Whereof, and as authorized by a Resolution of the Board of Directors of the Companies on July 21, 2003 the Companies have caused these presents to be signed by its Assistant Vice President and its corporate seals to be hereto affixed, duly attested by its Assistant Secretary. Further, pursuant to Resolution of the Board of Directors of the Companies, the Companies hereby unambiguously affirm that they are and will be bound by any mechanically applied signatures applied to this Power of Attorney.



Paul A. Bergenholtz, Assistant Secretary

David T. Akers, Assistant Vice President

STATE OF CONNECTICUT }
                        } ss.  Hartford
COUNTY OF HARTFORD    }

On this 23rd day of July, 2003, before me personally came David T. Akers, to me known, who being by me duly sworn, did depose and say: that he resides in the County of Hampden, Commonwealth of Massachusetts; that he is the Assistant Vice President of the Companies, the corporations described in and which executed the above instrument; that he knows the seals of the said corporations; that the seals affixed to the said instrument are such corporate seals; that they were so affixed by authority of the Boards of Directors of said corporations and that he signed his name thereto by like authority.

CERTIFICATE

Scott E. Paseka
Notary Public
My Commission Expires October 31, 2007

I, the undersigned, Assistant Vice President of the Companies, DO HEREBY CERTIFY that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is still in full force effective as of  October 26, 2006

Signed and sealed at the City of Hartford.



Yves Cantin, Assistant Vice President

POA 2003

# EXHIBIT B

# ▒ AIA® Document A312™ – 1984

## *Performance Bond* – BOND #83BCSEJ1942

**CONTRACTOR** *(Name and Address):*

Grace Electrical
Construction Corporation
10350 Dearlove Rd., Unit A
Glenview, IL 60025
**OWNER** *(Name and Address):*
Poulos, Inc.
735 S. Laramie Ave.
Chicago, IL 60644

**SURETY** *(Name and Principal Place of Business):*
Hartford Fire Insurance Company
4245 Meridian Parkway
Aurora, IL 60504

**CONSTRUCTION CONTRACT**
Date: April 26, 2007
Amount:  -One Hundred Eighteen Thousand Dollars & No/100-($118,000.00)-
Description *(Name and Location):*
Stickney Village Hall - Electrical Work
6533 West Pershing Road
Stickney, IL 60402
**BOND**
Date *(Not earlier than Construction Contract Date):*  May 10, 2007
Amount: -One Hundred Eighteen Thousand Dollars & No/100-($118,000.00)-
Modifications to this Bond:    [ X ]  None    [    ]   See Last Page

| CONTRACTOR AS PRINCIPAL Grace Electrical Construction Corporation | SURETY Hartford Fire Insurance Company |
|---|---|
| Company:    (Corporate Seal) | Company:    (Corporate Seal) |
| Signature: | Signature: |
| Name and    SOON JA CHUNG | Name and    William D. |
| Title:    PRESIDENT | Title:    Miller, Attorney-in-fact |

*(Any additional signatures appear on the last page)*

*(FOR INFORMATION ONLY - Name, Address and Telephone)*
**AGENT or BROKER:**
Kevin J. Scanlon, Columbian Agency
1005 West Laraway Road
New Lenox, IL 60451
815-485-4100

**OWNER'S REPRESENTATIVE**
*(Architect, Engineer or other party):*
Frega Associates, Ltd. (Architect)

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contract, Surety, Owner or other party shall be considered plural where applicable.



**EXHIBIT**
B

AIA Document A312™ — 1984. Copyright © 1984 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:41:21 on 05/10/2007 under Order No.1000243947_1 which expires on 6/23/2007, and is not for resale.
User Notes:                                                                                                   (3343270519)

§ 1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

§ 2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Section 3.1.

§ 3 If there is no Owner Default, the Surety's obligation under this Bond shall arise after:
§ 3.1 The Owner has notified the Contractor and the Surety at its address described in Section 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

§ 3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Section 3.1; and

§ 3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

§ 4 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:
§ 4.1 Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

§ 4.2 Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

§ 4.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

§ 4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:
    .1    After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or
    .2    Deny liability in whole or in part and notify the Owner citing reasons therefor.

§ 5 If the Surety does not proceed as provided in Section 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

§ 6 After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Section 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

AIA Document A312™ – 1984. Copyright © 1984 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:41:21 on 05/10/2007 under Order No.1000243947_1 which expires on 6/23/2007, and is not for resale.
User Notes:                                                                                                                                                           (3343270519)

**§ 6.1** The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

**§ 6.2** Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 4; and

**§ 6.3** Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

**§ 7** The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

**§ 8** The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

**§ 9** Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

**§ 10** Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

**§ 11** When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted here from and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

## § 12 DEFINITIONS
**§ 12.1** Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

**§ 12.2** Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

**§ 12.3** Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

**§ 12.4** Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

AIA Document A312™ – 1984. Copyright © 1984 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:41:21 on 05/10/2007 under Order No.1000243947_1 which expires on 6/23/2007, and is not for resale.
User Notes:                                                                                                      (3343270519)

3

# POWER OF ATTORNEY

*Direct Inquiries/Claims to:*
THE HARTFORD
BOND, T-4
690 ASYLUM AVENUE
HARTFORD, CONNECTICUT 06115
*call:* 888-266-3488 *or fax:* 860-757-5835
Agency Code: 83-551421

**KNOW ALL PERSONS BY THESE PRESENTS THAT:**

| | |
|---|---|
| X | Hartford Fire Insurance Company, a corporation duly organized under the laws of the State of Connecticut |
| X | Hartford Casualty Insurance Company, a corporation duly organized under the laws of the State of Indiana |
| X | Hartford Accident and Indemnity Company, a corporation duly organized under the laws of the State of Connecticut |
| | Hartford Underwriters Insurance Company, a corporation duly organized under the laws of the State of Connecticut |
| | Twin City Fire Insurance Company, a corporation duly organized under the laws of the State of Indiana |
| X | Hartford Insurance Company of Illinois, a corporation duly organized under the laws of the State of Illinois |
| | Hartford Insurance Company of the Midwest, a corporation duly organized under the laws of the State of Indiana |
| | Hartford Insurance Company of the Southeast, a corporation duly organized under the laws of the State of Florida |

having their home office in Hartford, Connecticut, (hereinafter collectively referred to as the "Companies") do hereby make, constitute and appoint, *up to the amount of unlimited:*

Robert W. Kegley, Suellen Bottomley, Robert H. Walker, William D. Miller, R.L. McWethy, Kevin J. Scanlon
of
New Lenox, IL

their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety(ies) only as delineated above by ☒, and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof, on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

In Witness Whereof, and as authorized by a Resolution of the Board of Directors of the Companies on July 21, 2003 the Companies have caused these presents to be signed by its Assistant Vice President and its corporate seals to be hereto affixed, duly attested by its Assistant Secretary.  Further, pursuant to Resolution of the Board of Directors of the Companies, the Companies hereby unambiguously affirm that they are and will be bound by any mechanically applied signatures applied to this Power of Attorney.



Paul A. Bergenholtz, Assistant Secretary

David T. Akers, Assistant Vice President

STATE OF CONNECTICUT } ss.    Hartford
COUNTY OF HARTFORD }

On this 23rd day of July, 2003, before me personally came David T. Akers, to me known, who being by me duly sworn, did depose and say: that he resides in the County of Hampden, Commonwealth of Massachusetts; that he is the Assistant Vice President of the Companies, the corporations described in and which executed the above instrument; that he knows the seals of the said corporations; that the seals affixed to the said instrument are such corporate seals; that they were so affixed by authority of the Boards of Directors of said corporations and that he signed his name thereto by like authority.

Scott E. Paseka
Notary Public
My Commission Expires October 31, 2007

**CERTIFICATE**

I, the undersigned, Assistant Vice President of the Companies, DO HEREBY CERTIFY that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is still in full force effective as of  May. 10, 2007.

Signed and sealed at the City of Hartford.

       

Yves Cantin, Assistant Vice President

Surety Company
Acknowledgment

STATE OF ____Illinois____

COUNTY OF ____Will____ } ss.:

On this ____10th____ day of ____May____ ____2007__, before me personally appeared ____William D. Miller____ , to me known, who, being by me duly sworn, did depose and say: that __he__ reside(s) at ____New Lenox, Illinois____; that __he__ is/are the __Attorney—in—fact__ of ____Hartford Fire Insurance Company____, the corporation described in and which executed the annexed instrument; that __he__ know(s) the corporate seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; that __he__ signed the same name(s) thereto by like order; and that the liabilities of said corporation do not exceed its assets as ascertained in the manner provided by law.

OFFICIAL SEAL
MARCIA MAXWELL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3-29-2009
BOND-3768-A

_Marcia Maxwell_
(Notary Public in and for the above County and State)

My commission expires ____3-29-2009____

# EXHIBIT C

# AIA® Document A312™ – 1984

## *Performance Bond* – BOND# 83BCSEB7701

**CONTRACTOR** *(Name and Address):*

Grace Electrical
Construction Corporation
10350 Dearlove Rd., Unit C
Glenview, IL 60025

**OWNER** *(Name and Address):*

Poulos, Inc.
735 S. Laramie Ave.
Chicago, IL 60644

**CONSTRUCTION CONTRACT**
Date: May 24, 2006
Amount: -One Million Three Hundred Twenty Four Thousand Seven Hundred
Dollars & No/100-($1,324,700.00)-
Description *(Name and Location):*
Sunny Hill Skilled Rehab Center Renovations
421 Doris Avenue
Joliet, IL 60433

**BOND**
Date *(Not earlier than Construction Contract Date):* August 14, 2006
Amount: -One Million Three Hundred Twenty Four Thousand Seven Hundred
Dollars & No/100-($1,324,700.00)-
Modifications to this Bond:    [ X ] None    [   ] See Last Page

**SURETY** *(Name and Principal Place of Business):*

Hartford Fire Insurance Company
4245 Meridian Parkway
Aurora, IL 60504

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contract, Surety, Owner or other party shall be considered plural where applicable.

| CONTRACTOR AS PRINCIPAL Grace Electrical Construction Corporation | SURETY Hartford Fire Insurance Company |
|---|---|
| Company:    (Corporate Seal) | Company:    (Corporate Seal) |
| Signature: | Signature: |
| Name and Soon Ja Chung | Name and William D. |
| Title: President | Title: Miller, Attorney-in-fact |

*(Any additional signatures appear on the last page)*

*(FOR INFORMATION ONLY – Name, Address and Telephone)*

**AGENT or BROKER:**

Kevin J. Scanlon, Columbian Agency
1005 West Laraway Road
New Lenox, IL 60451
815-485-4100

**OWNER'S REPRESENTATIVE**
*(Architect, Engineer or other party):*
Farnsworth Group, Inc,
(Architect)



EXHIBIT
C

AIA Document A312™ – 1984. Copyright © 1984 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:11:02 on 08/14/2006 under Order No.1000243947_1 which expires on 6/23/2007, and is not for resale.
User Notes:                                                                                                    (2960755641)

1

§ 1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

§ 2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Section 3.1.

§ 3 If there is no Owner Default, the Surety's obligation under this Bond shall arise after:
§ 3.1 The Owner has notified the Contractor and the Surety at its address described in Section 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

§ 3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Section 3.1; and

§ 3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

§ 4 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:
§ 4.1 Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

§ 4.2 Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

§ 4.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

§ 4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:
   .1 After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or
   .2 Deny liability in whole or in part and notify the Owner citing reasons therefor.

§ 5 If the Surety does not proceed as provided in Section 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

§ 6 After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Section 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

AIA Document A312™ – 1984. Copyright © 1984 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:11:02 on 08/14/2006 under Order No.1000243947_1 which expires on 6/23/2007, and is not for resale.
User Notes:                             (2960755641)

§ 6.1 The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

§ 6.2 Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 4; and

§ 6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

§ 7 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

§ 8 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 9 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 10 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

§ 11 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted here from and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ 12 DEFINITIONS
§ 12.1 Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

§ 12.2 Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

§ 12.3 Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

§ 12.4 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

**AIA Document A312™ – 1984. Copyright © 1984 by The American Institute of Architects. All rights reserved. WARNING: This AIA` Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA` Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:11:02 on 08/14/2006 under Order No.1000243947_1 which expires on 6/23/2007, and is not for resale.**
User Notes:　(2960755641)

§ 13 MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

CONTRACTOR AS PRINCIPAL                    SURETY
Company:          *(Corporate Seal)*       Company:          *(Corporate Seal)*

Signature:                                 Signature:
Name and Title:                            Name and Title:
Address:                                   Address:

AIA Document A312™ – 1984. Copyright © 1984 by The American Institute of Architects. All rights reserved. WARNING: This AIA Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:11:02 on 08/14/2006 under Order No.1000243947_1 which expires on 6/23/2007, and is not for resale.
User Notes:                                                                          (2960755641)

4

# POWER OF ATTORNEY

Direct inquiries/claims to:
THE HARTFORD
BOND, T-4
690 ASYLUM AVENUE
HARTFORD, CONNECTICUT 06115
call: 888-266-3488 or fax: 860-757-5835
Agency Code: 83-551421

### KNOW ALL PERSONS BY THESE PRESENTS THAT:

| | |
|---|---|
| X | Hartford Fire Insurance Company, a corporation duly organized under the laws of the State of Connecticut |
| X | Hartford Casualty Insurance Company, a corporation duly organized under the laws of the State of Indiana |
| X | Hartford Accident and Indemnity Company, a corporation duly organized under the laws of the State of Connecticut |
| | Hartford Underwriters Insurance Company, a corporation duly organized under the laws of the State of Connecticut |
| | Twin City Fire Insurance Company, a corporation duly organized under the laws of the State of Indiana |
| X | Hartford Insurance Company of Illinois, a corporation duly organized under the laws of the State of Illinois |
| | Hartford Insurance Company of the Midwest, a corporation duly organized under the laws of the State of Indiana |
| | Hartford Insurance Company of the Southeast, a corporation duly organized under the laws of the State of Florida |

having their home office in Hartford, Connecticut, (hereinafter collectively referred to as the "Companies") do hereby make, constitute and appoint, *up to the amount of unlimited:*

Robert W. Kegley, Suellen Bottomley, Robert H. Walker, William D. Miller, R.L. McWethy, Kevin J. Scanlon
*of*
New Lenox, IL

their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety(ies) only as delineated above by ☒, and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof, on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**In Witness Whereof,** and as authorized by a Resolution of the Board of Directors of the Companies on July 21, 2003 the Companies have caused these presents to be signed by its Assistant Vice President and its corporate seal to be hereto affixed, duly attested by its Assistant Secretary. Further, pursuant to Resolution of the Board of Directors of the Companies, the Companies hereby unambiguously affirm that they are and will be bound by any mechanically applied signatures applied to this Power of Attorney.

  

Paul A. Bergenholtz, Assistant Secretary

David T. Akers, Assistant Vice President

STATE OF CONNECTICUT
} ss.  Hartford
COUNTY OF HARTFORD

On this 23rd day of July, 2003, before me personally came David T. Akers, to me known, who being by me duly sworn, did depose and say: that he resides in the County of Hampden, Commonwealth of Massachusetts; that he is the Assistant Vice President of the Companies, the corporations described in and which executed the above instrument; that he knows the seals of the said corporations; that the seals affixed to the said instrument are such corporate seals; that they were so affixed by authority of the Boards of Directors of said corporations and that he signed his name thereto by like authority.



Scott E. Paseka
Notary Public
My Commission Expires October 31, 2007

CERTIFICATE

I, the undersigned, Assistant Vice President of the Companies, DO HEREBY CERTIFY that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is still in full force effective as of August 14, 2006

Signed and sealed at the City of Hartford.

       

Yves Cantin, Assistant Vice President

POA 2003

# EXHIBIT D

# Grace Electrical Construction Corporation

10350 Dearlove Road, Unit A, Glenview, IL 60025
Phone: 847-759-8063/8064    Fax: 847-759-8065

Hartford Fire Insurance Company
Bond Claim Department
One Hartford Plaza T-4
Hartford, CT 06155

Attn: David Anderstrom

| | |
|---|---|
| Bond No.: | 83 BCS EB7711 |
| Principal: | Grace Electrical Construction |
| Obligee: | Poulos Construction Company |
| Project: | Bradford Anderson Oglesby Public Library |

Dear David Anderstrom:

Grace Electrical Construction is presently unable to meet its current obligations on the above-referenced contract and its Indemnity Agreement with Hartford Fire Insurance Company. Because we are unable to complete the work and perform our obligations, with respect to both payment and performance on this contract, we request that Hartford Fire Insurance Company take such steps as it, in its sole discretion, considers necessary or appropriate to perform its obligations as Surety with respect to the above-captioned project, including, but not limited to, taking over and reletting the project.

We hereby agree to leave all equipment and material on site which is necessary for completion of the project and to provide any further possible assistance to Hartford Fire Insurance Company in completing such project as Hartford Fire Insurance Company may request, including execution of any further documents, letters, or authorizations, and the privilege to review all payment ledgers, accounts payable, accounts receivable, and other documentation or files relating to the above-referenced contract.    Hartford Fire Insurance Company is hereby authorized to take whatever action it deems necessary or appropriate in the premises.

We also direct the Obligee/Owner to pay directly to Hartford Fire Insurance Company, at such address as it may designate to the Obligee, all checks or vouchers or any further payment due on the above-described contract, including contract balances, claims, extras, change orders and retainages. This direction is irrevocable and in accordance with the Agreement executed between this company and Hartford Fire Insurance Company.

We hereby waive all statutory and/or contract notice provisions and herewith authorize the Obligee and/or Hartford Fire Insurance Company to declare default on this project and proceed accordingly.

Sincerely,
Grace Electrical Construction

#<Grace Electrical Construction Corporation>#

EXHIBIT

D

# EXHIBIT E

# Grace Electrical Construction Corporation

10350 Dearlove Road, Unit A, Glenview, IL 60025
Phone: 847-759-8063/8064   Fax: 847-759-8065

Hartford Fire Insurance Company
Bond Claim Department
One Hartford Plaza T-4
Hartford, CT 06155

Attn:  David Anderstrom

|  |  |
|---|---|
| Bond No.: | 83 BCS EJ1942 |
| Principal: | Grace Eectrical Construction |
| Obligee: | Poulos, Inc. |
| Project: | Stickney Village Hall - Electrical Work; 6533 West Pershing Road, Stickney, IL  60402 |

Dear David Anderstrom:

Grace Electrical Construction is presently unable to meet its current obligations on the above-referenced contract and its Indemnity Agreement with Hartford Fire Insurance Company. Because we are unable to complete the work and perform our obligations, with respect to both payment and performance on this contract, we request that Hartford Fire Insurance Company take such steps as it, in its sole discretion, considers necessary or appropriate to perform its obligations as Surety with respect to the above-captioned project, including, but not limited to, taking over and reletting the project.

We hereby agree to leave all equipment and material on site which is necessary for completion of the project and to provide any further possible assistance to Hartford Fire Insurance Company in completing such project as Hartford Fire Insurance Company may request, including execution of any further documents, letters, or authorizations, and the privilege to review all payment ledgers, accounts payable, accounts receivable, and other documentation or files relating to the above-referenced contract.   Hartford Fire Insurance Company is hereby authorized to take whatever action it deems necessary or appropriate in the premises.

We also direct the Obligee/Owner to p⸻ ʹ  ᵗ ᴴartford Fire Insurance Company, at such address as it may designate to the Obligee, aʹʹ ⸱ₗ⸱⸱⸱ ⸱ʳ vouchers or any further payment due on the above-described contract, including contract ᵇ ⸱ᵇ⸱⸱ ⸱ₛ ⸱claims, extras, change orders and retainages. This direction is irrevocable and in accordance with the Agreement executed between this company and Hartford Fire Insurance Company.

We hereby waive all statutory and/or contract notice provisions and herewith authorize the Obligee and/or Hartford Fire Insurance Company to declare default on this project and proceed accordingly.

Sincerely,
Grace Electrical Construction

#<Grace Electrical Construction Corporation>#

EXHIBIT
Blumberg No. 5208
E

# EXHIBIT F

# Grace Electrical Construction Corporation

10350 Dearlove Road, Unit A, Glenview, IL 60025
Phone: 847-759-8063/8064   Fax: 847-759-8065

Hartford Fire Insurance Company
Bond Claim Department
One Hartford Plaza T-4
Hartford, CT 06155

Attn: David Anderstrom

| | |
|---|---|
| Bond No.: | 83 BCS EB7701 |
| Principal: | Grace Electrical Construction |
| Obligee: | Poulos, Inc. |
| Project: | Sunny Hill Skilled Rehab Center Renovations FGI Proj#205173 |

Dear David Anderstrom:

Grace Electrical Construction is presently unable to meet its current obligations on the above-referenced contract and its Indemnity Agreement with Hartford Fire Insurance Company. Because we are unable to complete the work and perform our obligations, with respect to both payment and performance on this contract, we request that Hartford Fire Insurance Company take such steps as it, in its sole discretion, considers necessary or appropriate to perform its obligations as Surety with respect to the above-captioned project, including, but not limited to, taking over and reletting the project.

We hereby agree to leave all equipment and material on site which is necessary for completion of the project and to provide any further possible assistance to Hartford Fire Insurance Company in completing such project as Hartford Fire Insurance Company may request, including execution of any further documents, letters, or authorizations, and the privilege to review all payment ledgers, accounts payable, accounts receivable, and other documentation or files relating to the above-referenced contract. Hartford Fire Insurance Company is hereby authorized to take whatever action it deems necessary or appropriate in the premises.

We also direct the Obligee/Owner to pay directly to Hartford Fire Insurance Company, at such address as it may designate to the Obligee, all checks or vouchers or any further payment due on the above-described contract, including contract balances, claims, extras, change orders and retainages. This direction is irrevocable and in accordance with the Agreement executed between this company and Hartford Fire Insurance Company.

We hereby waive all statutory and/or contract notice provisions and herewith authorize the Obligee and/or Hartford Fire Insurance Company to declare default on this project and proceed accordingly.

Sincerely,
Grace Electrical Construction

#<Grace Electrical Construction Corp.

EXHIBIT
F

# EXHIBIT G

# POULOS

# CONSTRUCTION
# C O M P A N Y

November 8, 2007

Grace Electrical Construction Co.          Hartford Fire Insurance Company
10350Dearlove Rd, Unit C                   4245 Meridian Parkway
Glenview, IL 60025                         Aurora, IL 60504

Re: Performance Bond Number: #83BCSEB7711
Owner: Poulos, Inc.
Project: Bradford Anderson Oglesby Public Library
Contractor: Grace Electrical

To Whom It May Concern:

      Please accept this as timely, formal notification on behalf of the owner pursuant to Paragraph 3.1 of the above referenced bond that we are considering, and see no alternative to, declaring Grace Electrical in default. We are hereby requesting and attempting to arrange a conference with Grace Electrical and Hartford Fire Insurance Company to be held not later than fifteen (15) days, and with all due speed, after your receipt of this notice to discuss methods of performing the construction contract. We retain all rights to subsequently declare the contractor in default.

      Please contact us at your earliest convenience as the situation is critical to, and is at this time delaying the entire project schedule. At that time we can arrange a mutually convenient date and time to address the remedial measures that will be implemented to conform with the contract documents.

Sincerely,
Poulos Inc. Construction Company,


Tim Curtin
Vice President

cc:    Spero Poulos – Poulos Inc., President
      File

735 South Laramie Avenue    Chicago, Illinois 60644-5224
Phone: (773) 626-8600    Fax: (773) 626-8646
E-mail: admin@poulosconstruction.com
Web: www.poulosconstruction.com



EXHIBIT
G

# EXHIBIT H

# POULOS

CONSTRUCTION
C O M P A N Y

November 12, 2007

Grace Electrical Construction Co.                    Hartford Fire Insurance Company
10350Dearlove Rd, Unit C                             4245 Meridian Parkway
Glenview, IL 60025                                   Aurora, IL 60504

Re: Performance Bond Number: #83BCSEJ1942
Owner: Poulos, Inc.
Project: Stickney Village Hall
Contractor: Grace Electrical

To Whom It May Concern:

    Please accept this as timely, formal notification on behalf of the owner pursuant to
Paragraph 3.1 of the above referenced bond that we are considering, and see no alternative to,
declaring Grace Electrical in default. We are hereby requesting and attempting to arrange a
conference with Grace Electrical and Hartford Fire Insurance Company to be held not later than
fifteen (15) days after your receipt of this notice to discuss methods of performing the
construction contract. We retain all rights to subsequently declare the contractor in default.

    Please contact us at your convenience so that we can arrange a mutually convenient date
and time to address the remedial measures that will be implemented to conform with the contract
documents.

Sincerely,
Poulos Inc. Construction Company,

Tim Curtin
Vice President

cc:    Spero Poulos – Poulos Inc., President
       File

735 South Laramie Avenue    Chicago, Illinois 60644-5224
Phone: (773) 626-8600    Fax: (773) 626-8646
E-mail: admin@poulosconstruction.com
Web: www.poulosconstruction.com



# EXHIBIT I

# POULOS

## CONSTRUCTION COMPANY

November 12, 2007

Grace Electrical Construction Co.
10350Dearlove Rd, Unit C
Glenview, IL 60025

Hartford Fire Insurance Company
4245 Meridian Parkway
Aurora, IL 60504

Re: Performance Bond Number: #83BCSEB7701
Owner: Poulos, Inc.
Project: Sunny Hill Skilled Rehab Center Renovations
Contractor: Grace Electrical

To Whom It May Concern:

Please accept this as timely, formal notification on behalf of the owner pursuant to Paragraph 3.1 of the above referenced bond that we are considering, and see no alternative to, declaring Grace Electrical in default. We are hereby requesting and attempting to arrange a conference with Grace Electrical and Hartford Fire Insurance Company to be held not later than fifteen (15) days after your receipt of this notice to discuss methods of performing the construction contract. We retain all rights to subsequently declare the contractor in default.

Please contact us at your convenience so that we can arrange a mutually convenient date and time to address the remedial measures that will be implemented to conform with the contract documents.

Sincerely,
Poulos Inc. Construction Company,

Tim Curtin
Vice President

cc:    Spero Poulos – Poulos Inc., President
       File

735 South Laramie Avenue    Chicago, Illinois 60644-5224
Phone: (773) 626-8600    Fax: (773) 626-8646
E-mail: admin@poulosconstruction.com
Web: www.poulosconstruction.com



# EXHIBIT J

# S T E I N,  R A Y  &  H A R R I S  LLP

ATTORNEYS AT LAW

222 West Adams Street  Suite 1800  Chicago, Illinois  60606

Telephone: (312) 641-3700
Telecopier: (312) 641-3701

March 17, 2008

**VIA FACSIMILE AND FIRST CLASS MAIL**

Mr. David Anderstrom
Hartford Fire Insurance Company
1 Hartford Plaza, T-4-101
Hartford, CT 06155

   Re: **Poulos, Inc.**

Dear Mr. Anderstrom:

   This letter is being sent with respect to the following performance and payment bonds issued by Hartford Fire Insurance Company ("Hartford" or "Surety") on behalf of Poulos, Inc. ("Obligee"):  Performance  and  Payment  Bonds  #83BCSEJ1943,  #83BCSEB7711, #83BCSEB7701, and #83BCSEJ1942 (collectively, "Payment Bonds" or "Performance Bonds" as applicable).

   On or about November 12, 2007, Poulos sent Hartford written notice pursuant to Section 3.1 of the respective Bonds, and in compliance with the Bonds, Poulos arranged a conference with Grace Electrical Construction Co. ("Grace" or "Subcontractor") and the Surety to discuss methods of performance of the several construction contracts.  At the meeting, the Surety assured Obligee that it would honor its obligations under the respective Performance Bonds and that Obligee should proceed to have the work performed by replacement subcontractors so as not to jeopardize the respective projects.

   Poulos complied with all provisions of the respective Performance Bonds in defaulting Grace and agreeing to provide credits, if any, to the Surety of any remaining Balances of the respective Contract Prices under the Grace Subcontracts.

   Hartford has breached the terms of the respective Performance Bonds by (1) failing to honor its obligations as represented to Poulos to pay Poulos the additional cost of the subcontract work on the respective projects necessitated by the default of Grace under its subcontracts, despite Hartford's assurances that it would do so; and/or (2) Hartford's default by its failure to proceed as provided in Section 4 of the respective Bonds with reasonable promptness.

   With regard to the respective Payment Bonds, Poulos promptly notified Hartford of several claims by entities that provided labor and materials to Grace on the respective projects including the following claimants: CES, AWA Construction, Paramount Electrical Supply, SimplexGrinnell LP, Brook Electrical Distribution, Sunrise Electric Company, IBEW Local 176



S T E I N ,  R A Y  &  H A R R I S  LLP

Mr. David Anderstrom
March 17, 2008
Page 2


Fringe Benefit Funds, and REM Electric. To date, despite repeated statements by representatives of the Surety that claimants have been paid, Poulos understands that the claimants have not been paid. In addition, Poulos has requested pursuant to the respective Payment Bonds that the Surety defend, indemnify, and hold harmless, Poulos from any claims, liens, or lawsuits, for the payment for labor, materials or equipment furnished for use in the performance of Grace's work on the Project, however, Surety has breached its obligations to Poulos by its refusal to accept Poulos' tender of such defenses.

Poulos requests that Hartford arrange for a meeting to be held within the next 7 business days to discuss the prompt payment of all amounts due under the respective Performance Bonds; the honoring of the obligation to defend and hold harmless Poulos under the respective Payment Bond claims; and the payment of all legal fees and other costs incurred to date by Poulos.

Please contact me at your earliest convenience.

Sincerely,

Robert J. Harris

cc:    Mr. Spero Poulos
       Mr. Tim Curtin

RJH:dsf

# EXHIBIT K

# Poulos, Inc Construction Co.
# RE: Bradford Anderson Oglesby
# Public Libray

| | | |
|---|---|---|
| Grace Electric Contract | $ | 357,430.00 |
| Payments made to Grace | $ | (199,503.00) |
| Payments made to Suppliers w/ 15 % Mark-up | $ | (42,884.52) |
| Payments made to AWA Construction (Labor) | $ | (196,258.75) |
| AWA Payments to Suppliers w/ 15 % Mark-up | $ | (212.00) |
| Total | $ | (81,428.28) |
| | | |
| Total  Overpayment | $ | 81,428.28 |



# AWA Construction Company, Inc

# INVOICE

1137 West Taylor Street Unit # 345
Chicago, IL 60607
Phone 312.388.6968   Fax 312.226.8717

**DATE:** February 23, 2008
**INVOICE #** 1
**FOR:**

*Bradford Anderson*
*Oglesby Public Library*

**Bill To:**
Spero Poulos
Poulos, Inc. Construction
735 S. Laramire
Chicago, IL 60649
773-626-8600

| DESCRIPTION | AMOUNT |
|---|---|
| Labor for November 2007, December 2007 & January 2008 | $ 196,258.75 |
| Materials w/ mark-up | 184.35 |
| | |
| **TOTAL** | $ 196,443.10 |

Make all checks payable to **AWA Construction Company, Inc**
If you have any questions concerning this invoice, Andrew Williams 312.388.6968

**THANK YOU FOR YOUR BUSINESS!**

# EXHIBIT L

# Poulos, Inc Construction Co.
# RE: Stickney Village Hall
# As of 3/31/08

| | | |
|---|---|---|
| Grace Electric Contract | $ | 118,000.00 |
| Payments made to Grace | $ | (21,240.00) |
| Payments made to Suppliers + 15% Mark-up | $ | (7,573.22) |
| Payments made to AWA Construction up to 3/31/08 (Labor) | $ | (88,880.00) |
| Payments made to AWA Construction up to 3/31/08 (Material) + 15% Mark-up | $ | (17,039.32) |
| Total | $ | (16,732.54) |
| | | |
| Total Overpayment | $ | 16,732.54 |



# AWA Construction Company, Inc

# INVOICE

1137 West Taylor Street Unit # 345
Chicago, IL 60607
Phone 312.388.6968   Fax 312.226.8717

**DATE:** March 31, 2008
**INVOICE #** 2
**FOR:** *New Stickney Village Hall*

**Bill To:**
Spero Poulos
Poulos, Inc. Construction
735 S. Laramire
Chicago, IL 60649
773-626-8600

| DESCRIPTION | AMOUNT |
|---|---|
| Labor for November 2007 through March 2008 | $ 88,880.00 |
| Materials w/ mark-up | $ 14,816.80 |
| | |
| **TOTAL** | $ 103,696.80 |

Make all checks payable to **AWA Construction Company, Inc**
If you have any questions concerning this invoice, Andrew Williams 312.388.6968

**THANK YOU FOR YOUR BUSINESS!**

# EXHIBIT M

# S T E I N ,   R A Y   &   H A R R I S   LLP

ATTORNEYS AT LAW

222 West Adams Street   Suite 1800   Chicago, Illinois   60606

Telephone: (312) 641-3700
Telecopier: (312) 641-3701

April 10, 2008

**VIA FACSIMILE AND FIRST CLASS MAIL**

Mr. David Anderstrom
Hartford Fire Insurance Company
1 Hartford Plaza, T-4-101
Hartford, CT 06155

> Re:   **Poulos, Inc. Bond Number 83BCSEJ1942 and 83BCSEB7701**

Dear Mr. Anderstrom:

This letter confirms certain matters discussed during our April 2, 2008 meeting attended by you as representative of Hartford Fire Insurance Company ("Harford"), Mark Lee of Construction Consulting & Disbursement Services, Inc., Spero Poulos and Tim Curtin of Poulos Inc. (collectively "Poulos" or "Obligee"), and Diana Zhitnitsky and myself, Poulos' counsel ("April 2[nd] Meeting"). The purpose of the meeting was to attempt resolve Hartford's lack of payment regarding the Performance and Payment Bonds identified in my letter to you dated March 17, 2008, and to advise Hartford of the status of the projects and any new matters that may have arisen related to the referenced Bonds.

As you may recall from the December 4, 2007 meeting, Hartford advised Obligee that it would honor its obligations under the respective Performance Bonds and that Obligee should proceed to have the work performed by replacement subcontractors so as not to jeopardize the respective projects. Obligee proceeded as directed by Hartford and hired replacement subcontractors to complete the applicable work on a time and material basis.

On February 24, 2008, Obligee received an invoice from its replacement contractor AWA that the sum of $109,696.80 was due for the Stickney Village Hall Project, which is $16,732.54 more than the original contract sum in the subcontract with Grace Electrical Construction Co. ("Grace"). Poulos promptly advised Hartford at the April 2nd Meeting that the sum of $16,732.54, plus any additional invoice amounts to become due AWA, in excess of the contract sum with Grace, would be required to complete the Stickney Village Hall Project.

With respect to the Sunny Hill Project, Mr. Poulos and Mr. Curtin reiterated at the April 2nd Meeting that Hartford was previously advised of the Owner's election to exercise the "E-Wing option" under its contract with Poulos. Mr. Poulos and Mr. Curtin advised Mr. Lee on



S T E I N,   R A Y   &   H A R R I S   LLP

December 4, 2007, that the Owner was exercising its option to have Poulos perform work on "E-Wing," and Mr. Lee advised Poulos that he would obtain bids from replacement subcontractors to complete the work. Mr. Lee failed to forward any information regarding bids for replacement contractors to complete E-Wing, and accordingly, Poulos initiated investigation of the same to avoid project delays. At the April 2nd meeting, Poulos reconfirmed that Owner has elected to exercise its "E-Wing" option under the contract and that the bids Poulos obtained from replacement contractors are in excess of Grace's contract price to complete the E-Wing work by approximately $389,000. Mr. Anderstrom and Mr. Lee advised Poulos that they would review the relevant contract and bid documents, and promptly forward Poulos an appropriate response as to the E-Wing matter for the Sunny Hill Project.

Lastly, regarding the outstanding Payment Bond claims already submitted to Hartford by Grace's subcontractors, you confirmed at the April 2nd Meeting that you would promptly verify the subcontractor's claim amounts, and agreed that Hartford would either promptly make payment or otherwise notify the claimant and Poulos of any concerns or questions as to the particular claim no later than April 9, 2008. My office contacted you this morning to follow up on the status of these payments, and you confirmed that you were finalizing your review of the delivery notices and expected to make payment to the claimants no later than the early part of next week. As you know, at least one of Grace's subcontractors has filed a complaint against Poulos and the Owner and a lien against the public funds, and several other subcontractors have threatened to shortly do the same.

Poulos has complied with the terms of the respective Bonds and has at all times complied with Hartford's directions and requests for documents. Grace's breach and default has caused Poulos to incur additional costs, including rising delay costs. My client looks forward to a timely resolution of these matters so as to avoid further damaging its professional relationship with the Owner of theses projects, and to avoid accruing any additional, avoidable expenses, which it may later seek reimbursement of.

Please contact me if I can be of any assistance in resolving the above-referenced matters.

Sincerely,

Robert J. Harris

cc:    Mr. Spero Poulos
       Mr. Tim Curtin
       Mr. Mark Lee

# EXHIBIT N

# S T E I N ,   R A Y   &   H A R R I S   LLP

ATTORNEYS AT LAW

222 West Adams Street   Suite 1800   Chicago, Illinois   60606

Telephone: (312) 641-3700
Telecopier: (312) 641-3701

April 30, 2008

**VIA FACSIMILE AND FIRST CLASS MAIL**

Mr. David Anderstrom
Hartford Fire Insurance Company
1 Hartford Plaza, T-4-101
Hartford, CT 06155

      Re:    **Poulos, Inc. Bond Number 83BCSEJ1942, 83BCSEJ1943, 83BCSEB7701, and 83BCSEB7711**

Dear Mr. Anderstrom:

      I am writing to confirm a few of the matters we discussed last week regarding the above-referenced bond claims. As you know, several subcontractors have submitted claims to Hartford on the payment bonds and have filed related claims in the Cook County Circuit Court.

      When we spoke the week of April 7, 2008, you stated that you anticipated making payment on the payment bond claims the following week. You explained that you were finalizing your verification of the delivery notices and would make payment once you completed this review. During the same conversation I reminded you that Poulos had an upcoming status hearing in the case filed by Brook Electrical, one of the subcontractors who had submitted a claim to Hartford.

      I contacted you on April 15, 2008 and again on April 18, 2008 to follow up on the status of Hartford's payment of these subcontractor claims. I was not able to reach you and contacted you again on April 21, 2008 and April 23, 2008. During our conversation on April 23rd, you explained that you had been out of town the prior week and were unable to return my voice messages, but that you were continuing to process these payment bond claims. You also advised that you anticipated making payment to Brook Electrical and the other payment bond claimants "shortly" as you were continuing to finalize your verification of the delivery notices. As of this morning, Brook Electrical has still not been paid by Hartford. I confirmed with Brook Electrical's counsel that they have in fact submitted all of the documents requested by you and Mark Lee of Construction Consulting and Disbursement Services, Inc. Counsel for Paramont E.S. Inc. advised me that they filed a complaint on April 25, 2008 for the Bradford Library project.



EXHIBIT

N

S T E I N ,   R A Y   &   H A R R I S   L L P

I also have confirmed that Poulos has submitted all of the documentation requested by Hartford to process its performance bond claims. As of today's date, neither Poulos nor my office has heard from you regarding these performance bond claims.

Poulos is anxious to resolve both the payment and performance bond claims so as to avoid exposure to additional lawsuits from these subcontractors and to best protect its business relationship with the owner of these various projects. We need responses within the next five (5) business days. Otherwise, we will be forced to take all action that our client deems appropriate.

Sincerely,

Robert J. Harris

cc:    Mr. Spero Poulos
       Mr. Tim Curtin
       Mr. Mark Lee